UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**JACQUELINE DEMERITTE and**
**TAMISHA LAFALAISE,** individually, and          Case No.
on behalf of others similarly situated,

        Plaintiffs,

vs.

**GLOBAL RESPONSE, LLC.,**
a Florida Limited Liability Company,

        Defendant.

---

## COLLECTIVE AND CLASS ACTION
## COMPLAINT WITH JURY DEMAND

Plaintiffs Jacqueline Demeritte ("Plaintiff Demeritte") and Tamisha LaFalaise ("Plaintiff LaFalaise"), (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant, Global Response, LLC. (hereinafter referred to as "Global Response" or "Defendant"), and state as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually, and on behalf of all similarly situated persons, known and unknown, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., state contract laws, and common law claims of unjust enrichment.

2. Defendant employed Plaintiffs as hourly call center employees, with job titles including, but not limited to, "Customer Service Representative" or "Customer Service Agent."

For purposes of this lawsuit, there are no material differences between those positions, so they are collectively referred to herein as "Customer Service Representatives" or "CSRs." CSRs were responsible for providing customer service to Defendant's clientele.

3.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses that are prevalent in the industry. **Exhibit A**.

4.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

5.     More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

6.     Defendant failed to pay Plaintiffs and all similarly situated employees for their pre-shift time spent booting up their computers, logging into required computer networks and software applications.

7.     Defendant also failed to compensate Plaintiffs and all similarly situated employees for pre- and mid-shift, off-the-clock work attributed to technical problems with the computers, networks, programs/applications, and/or phones.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to

28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

9.      Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

10.      Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

11.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members are citizens of different states.

12.      A private party may also bring an action for damages for breach of contract under the common law.  Plaintiffs' breach of contract claims originate from the same facts that form the basis of their federal claims.  Thus, the Court has supplemental jurisdiction over Plaintiffs' breach of contract claims pursuant to 28 U.S.C. §1367.

13.      Plaintiffs' state-law claims originate from the same facts that form the basis of their federal claims.  Thus, the Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §1367.

14.      This Court has personal jurisdiction over Defendant because it does business within the state of Florida and has its headquarters in Margate, Florida.

15.       Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because

Defendant employs CSRs in this district, conducts business in this district, is headquartered in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

16.    Plaintiff Jacqueline Demeritte is a resident of Florida, and was employed by Defendant as an hourly CSR from approximately October 2018 to December 2019.  Ms. Demeritte signed a consent form to join this lawsuit, which is located at **Exhibit B**.

17.    Plaintiff Tamisha LaFalaise is a resident of Florida, and was employed by Defendant as an hourly CSR from approximately May 2018 to July 2019.  Ms. LaFalaise signed a consent form to join this lawsuit, which is located at **Exhibit C**.

18.    Defendant is a Florida limited liability corporation with its headquarters and principal offices located at 777 South State Rd. #7, Margate, Florida 33068.  Defendant is registered to do business in Florida, with a business identification number of 59-1554822.

19.    Defendant provides call center services throughout the country.  According to Defendant's website, Defendant "provides outsourced customer service for the world's top brands."  *See*, https://www.globalresponse.com/ (last visited on 12/1/20).

20.    Upon information and belief, during the relevant time, Defendant has employed thousands of CSRs to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

21.    CSRs are typically paid at a rate of approximately $11.00 to $12.00 per hour.

22.    CSRs are mostly employed on a full-time basis (meaning more than 30 hours per week) and on some weeks worked over forty (40) hours in a single week, but in other weeks worked less than forty (40) hours.

23.     As CSRs, Plaintiffs assisted customers of various stores like (Lane Bryant) over the phone in placing and tracking orders for goods.  See, https://www.globalresponse.com/ (last visited December 17, 2020).

24.     Prior to being hired, CSRs receive an offer from Defendant that sets forth the requirements of a CSR, the job duties, and the offered rate of pay.

25.     Defendant also provides all CSRs with training on how to carry out their day to day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day.

26.     Plaintiffs accepted Defendant's offer to serve as CSRs with the understanding that their base wage rate would be paid as promised.  In the case of both Plaintiffs, at $11.00 per hour.

27.     During their training, CSRs are taught, *inter alia*, how to open and use Defendant's computer networks and software programs/applications, how to track their time, the importance of attendance and schedule expectations, and Defendant's policies related to each topic.

28.     Once training is completed, Defendant requires the CSRs to follow daily computer login procedures.

29.     Plaintiffs and other similarly situated CSRs are trained or instructed not to clock in until they have loaded all of their essential work-related computer programs, so they can be prepared to take calls the moment they begin their shift.

30.     All of Defendant's CSRs use the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.  These programs and applications are integral and an important part of the CSRs' work and they cannot

perform their jobs without them.

31.     In order to perform their job, Plaintiffs and all other CSRs are required to boot up and log in to various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  This pre-shift process takes substantial time on a daily basis ranging from two (2) to ten (10) minutes per day, and even longer on days where Defendant's computer networks and programs are not working properly.

32.     However, Plaintiffs and all other CSRs are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete, meaning that Plaintiffs and all other CSRs work at least two (2) minutes each shift for which they are never compensated.

33.     The pre-shift off-the-clock time Plaintiffs and all other CSRs spend booting up and logging in to their computers directly benefits Defendant.

34.     The pre-shift boot-up and login process is an integral and indispensable part of the CSRs' job responsibilities.

35.     Despite knowing Plaintiffs and all other CSRs performed work before their scheduled shifts, Defendant and its managers failed to make any effort to stop or disallow this pre-shift work and instead suffered and permitted it to happen.

36.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other CSRs booted up and logged into their computers each day, along with the time they logged into their telephone systems.

37.     Defendant possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other CSRs experienced down time due to technical issues.

38.     CSRs also performed off-the-clock work when they experienced technical

difficulties, which kicked them out of Defendant's timekeeping system.

39.     Despite its ability to track the amount of time Plaintiffs and other CSRs spend in connection with the pre-shift boot-up and login process and technical downtime, Defendant failed to pay Plaintiffs and other CSRs for the off-the-clock work they performed each shift.

**A.  Pre-Shift Off-the-Clock Work**

40.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs are required to start up and log into various secure computer networks and software programs/applications in order to access information.

41.     The pre-shift start-up and login process takes substantial time on a daily basis with said time ranging from two (2) to ten (10) minutes per day, or even longer when technical issues arise.

42.     Defendant's CSRs complete this process before each shift; however, they are not actually "clocked in" for their shifts until *after* they start-up their computer, open the essential programs/applications, enter their credentials (password and username), log into their phone system, and change their status to "available" to take calls.

43.     As a result, Plaintiffs and other CSRs spend between two (2) to ten (10)  minutes or more at the beginning of each shift performing off-the-clock (uncompensated) work for Defendant.

44.     The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other CSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**B. Technical Down Time**

45.     Additionally, Plaintiffs and other CSRs regularly experience technical problems with their computer systems, which log them out of the time keeping systems and cause them to redo some or all of the boot up process.

46.     In these situations, the CSRs can spend up to an hour working with Defendant's tech team to resolve the problems.

47.     Defendant is aware of the time CSRs spend experiencing technical difficulties and working with Defendant's tech team to resolve these difficulties, and Defendant could have paid CSRs for this time, but did not.

**C. Exemplary Work Weeks**

48.     An example of specific workweek in which Defendant failed to pay Plaintiff Demeritte all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Plaintiff Jacqueline Demeritte**
**Pay Period of October 29, 2018 to November 04, 2018**

- Plaintiff worked 40.4 hours and was paid at a rate of $11.00 per hour for 40 hours and at her overtime rate of 16.50 per hour for 0.4 hours.

- With pre-shift time of 2 to 10 minutes per shift, Plaintiff should have been paid an additional 10 to 50 minutes or more at her overtime rate of $16.50 for each hour.

***Exhibit D***, Demeritte Exemplary Paystubs.

49.     An example of specific workweek in which Defendant failed to pay Plaintiff Demeritte all regular wages due for hours worked in below 40 hours (in support of Plaintiff's breach of contract and unjust enrichment claims) includes the following:

**Plaintiff Jacqueline Demeritte**
**Pay Period of November 12, 2018 to November 18, 2018**

- Plaintiff worked 23.63 hours and was paid at a rate of $11.00 per hour for 23.63 hours.

- With pre-shift time of 2 to 10 minutes per shift, Plaintiff should have been paid an additional 10 to 50 minutes or more at her regular rate of $11.00 for each hour.

***Exhibit D***, Demeritte Exemplary Paystubs.

50.     An example of specific workweek in which Defendant failed to pay Plaintiff

Lafalaise all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA)

includes the following:

**Plaintiff Tamisha LaFalaise**
**Pay Period of August 6, 2018 to August 12, 2018**

- Plaintiff worked 46.48 hours and was paid at a rate of $11.00 per hour for 40 hours and $16.50 for 6.48 hours.

- With pre-shift time of 2 to 10 minutes per shift, Plaintiff should have been paid an additional 10 to 50 minutes or more at her regular rate of $11.00 for each hour.

***Exhibit E***, LaFalaise Exemplary Paystub.

### D. **Defendant Benefitted from the CSRs' Off-the-Clock Work**

51.     At all relevant times, Defendant required and directly benefitted from the off-the-clock work performed by Plaintiffs and all other CSRs in connection with the pre-shift activities described above.

52.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other CSRs.

53.     At all relevant times, Defendant was able to track the amount of time Plaintiffs and all other CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiffs and all other CSRs for the off-the-clock work they

performed.

54.     At all relevant times, Plaintiffs and all other CSRs were non-exempt hourly employees, subject to the requirements of the FLSA and related state laws.

55.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the CSRs in order to pressure them into performing pre-shift work, off-the-clock.

56.     Defendant expressly trained and instructed Plaintiffs and all other CSRs to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

57.     Defendant instructed CSRs to have all work applications and systems fully loaded before they clocked-in, so that they were prepared to take calls the moment they clocked-in at the start of their shift.   Similarly, at the end of the shift, Defendant instructed CSRs to clock-out before closing all work applications and systems to make certain they were clocked-out at the moment they stopped taking calls.

58.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the CSRs of wages owed for the pre-shift activities they performed.

59.     During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight time wages, which is usually referred to as "gap time" claims. Gap time is compensable.

60.     During the weeks that CSRs worked over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

61.     Defendant is in possession of the payroll and timekeeping records that will

illustrate exactly which weeks the Plaintiffs worked over forty hours and exactly which weeks worked under forty hours.

62.     Defendant knew or should have known that the time spent by Plaintiffs and other CSRs in connection with the pre-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

63.     Unpaid straight time wages (for Plaintiffs' gap time claims) related to the off-the-clock work described herein is owed to Plaintiffs at the rate which they are typically paid for hours worked up to forty (40) hours in a workweek.

64.     Unpaid wages related to the off-the-clock work described herein is owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

65.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> All current and former hourly CSRs who worked for Global Response Corporation in Florida at any time in the past three years.

(hereinafter referred to as the "FLSA Collective").  Plaintiffs reserve the right to amend this definition if necessary.

66.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

67.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales

persons.

68.     Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

69.     All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

70.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

a.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

b.     Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work, such as tech time; and

c.     Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

71.     Defendant is aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

72.     Defendant's unlawful conduct was widespread, repeated, and consistent.

73.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they

have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

74.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift startup/login time and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

75.     There are many similarly situated current and former CSRs who were underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

76.     Plaintiffs estimate the FLSA Collective, including both current and former CSRs over the relevant period, includes thousands of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

### RULE 23 FLORIDA CLASS ACTION ALLEGATIONS

77.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Global Response Corporation in Florida at any time in the past three years.*

(hereinafter referred to as the "Rule 23 Florida Class").  Plaintiffs reserve the right to amend this definition if necessary.

78.     The members of the Rule 23 Florida Class are so numerous that joinder of all Rule 23 Florida Class members in this case would be impractical.  Plaintiffs reasonably estimate

there are hundreds, if not thousands, of Rule 23 Florida Class members.  Rule 23 Florida Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

79.     There is a well-defined community of interests among Rule 23 Florida Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Florida Class.  These common legal and factual questions, include, but are not limited to, the following:

a.     Whether the pre-shift time Rule 23 Florida Class members spend on startup and login activities each session is compensable time;

b.     Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

c.     Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

80.     Plaintiffs' claims are typical of those of the Rule 23 Florida Class in that they and all other Rule 23 Florida Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Florida Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Florida Class members.

81.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Florida Class and she retained counsel who are qualified and experienced in the prosecution of Florida wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Florida Class.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23

Florida Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

83.     This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

84.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Florida Class and declaratory relief is appropriate in this case with respect to the Rule 23 Florida Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

## FLSA COLLECTIVE ACTION

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

86.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

87.     At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

88.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

89.     At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

90.     Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

91.     Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

92.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

93.     At all times relevant to this action, Defendant required Plaintiffs and all the proposed FLSA Collective members to perform pre-shift work off the clock, every shift, and Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

94.     The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

95.     In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

96.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for these work activities, but did not.

97.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II

## RULE 23 FLORIDA CLASS ACTION

## BREACH OF CONTRACT

98.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

99.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Florida Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Florida Class members performed on behalf of Defendant.

100.    For example, Defendant offered to compensate Plaintiffs at a minimum of $11.00 per hour, if she agreed to perform services for Defendant as a CSR. Plaintiffs accepted Defendant's offer and performed their duties as CSRs in reliance on the offer.

101.    Defendant breached their contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

102.    Upon information and belief, each Rule 23 Florida Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $11.00 per hour within the applicable period.

103.    Plaintiffs and every other Rule 23 Florida Class member accepted the terms of Defendant's contractual promises contained in the offer letter and performed under the contract by

doing their jobs and carrying out the work they performed each shift including the unpaid off-the-clock work that was required of them in connection with pre-shift work and technical downtime described herein.

104.     By not paying Plaintiffs and every other Rule 23 Florida Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Florida Class.

105.     Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Florida Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Florida Class member.

106.     Plaintiffs and the Rule 23 Florida Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims).

107.     Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

108.     As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 National Class were damaged in an amount to be determined at trial.

## COUNT III

## RULE 23 FLORIDA CLASS ACTION

## UNJUST ENRICHMENT

109.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

110.    This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

111.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Florida Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Florida Class members performed for the benefit of Defendant.

112.    Plaintiffs and every other Rule 23 Florida Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

113.    By not paying Plaintiffs and every other Rule 23 Florida Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

114.    Plaintiffs and the Rule 23 Florida Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

115.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Florida Class member and enjoyed the benefits derived therefrom.

116.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Florida Class member to finance its various business ventures or pay its equity owners.

117.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Florida Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Florida Class for the same.

118.    Plaintiffs and the Rule 23 Florida Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Florida Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

119.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Florida Class member suffered damages, including but not limited to, loss of wages.

WHEREFORE, Plaintiffs request the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Florida Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 Florida Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count III);

d.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Florida Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.    An Order designating the Plaintiffs as representatives of the FLSA Collective and the Rule 23 Florida Class, and undersigned counsel as Class counsel for the same;

f.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.     An Order declaring Defendant's violations of the FLSA were willful;

h.     An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Florida Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.     An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiffs and the members of the Rule 23 Florida Class to perform;

j.     An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective and the Rule 23 Florida Class the full amount of damages and liquidated damages available by law;

k.     An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l.     An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.     An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: December 30, 2020                         Respectfully Submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch
FBN: 027777
Morgan & Morgan, P.A.
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile:  (954) 327-3013
Email: AFrisch@forthepeople.com

*Local Counsel for Plaintiffs*

_/s/ Jason J. Thompson_
Jason J. Thompson (_PHV_ forthcoming**)**
Charles R. Ash, IV (_PHV_ forthcoming)
Alana Karabal (_PHV_ forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
jthompson@sommerspc.com
crash@sommerspc.com
akrabal@sommerspc.com

_Trial Counsel for Plaintiffs_